BARRY, Judge.
Plaintiff appeals from a directed verdict granted by the Trial Judge at the close of his case before a jury. The only issue is to determine if, after considering all of the evidence in the light most favorable to the plaintiff, reasonable and fair-minded persons might conclude that plaintiff was outside the course and scope of his employment at the time of his accident, and thus entitled to a trial by jury.
Plaintiff was a passenger in a vehicle owned by his employer and driven by a fellow employee when he was severely injured in an intersectional collision with a tractor-trailer. Plaintiff alleges that at the time of the accident he was on a lunch break and not a mission for his employer. Defendants counter that plaintiff and the driver were permitted use of their employer’s car on this particular occasion because they were going to pick up lunch for their supervisor.
Plaintiff sued the truck driver, his employer and insurer, and his own employer, Budget Rent-A-Car and Budget’s liability insurer, National Union Fire Insurance Company. United States Fidelity & Guaranty Company intervened for compensation and medical benefits paid as a result of the accident. Trial was held before a jury and following plaintiff’s case in chief all defendants were granted a directed verdict. Plaintiff and U.S.F. & G. now appeal as to plaintiff’s employer (Budget) and the automobile’s liability insurer (National Union). *1096 We affirm as to the employer because if the two employees were not in the course and scope of employment then the employer is not liable in tort under respondeat superior, and if they were, workers’ compensation is the exclusive remedy. We set aside as to the automobile insurer.
In oral reasons from the bench the Trial Judge stated it was within his discretion “.. . to determine from all of the evidence presented thus far if there is sufficient information for this jury or sufficient evidence for this jury to determine if on the facts of this case as they have been fully presented by the plaintiff, the plaintiff is entitled to a verdict from this jury.” The Judge continues: “The evidence is such that in the opinion of this court, this jury could not with any degree of reasonableness conclude that this man and the driver of the vehicle in which he was injured was at the time of this accident acting in any way or capacity other than within the course and scope of his employment.” The Judge then briefly reviews the testimony and finds that plaintiff was on a mission for his supervisor and therefore in the course of his employment, and “... concludes from the evidence that this jury has to resolve the issue of fact in favor of the defendants, Budget Rent-A-Car Company and National Union Fire Insurance Company and as a matter of law having resolved that question of fact, the Court must conclude that as a matter of law the plaintiff’s sole and only remedy under the law is workmen’s compensation.”
The basis for a directed verdict in a jury trial is found in LSA-C.C.P. art. 1810(A)[1], however, the article does not set forth what criteria the trier of fact should use in weighing the evidence. Article 1810 follows the provisions of FRCP Rule 50(a) and this federal counterpart has been interpreted to permit the Trial Judge to grant the motion only when “.. . facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict...”. Boeing Company v. Shipman, 411 F.2d 365 (5th Cir. 1969) at p. 374. Our Third Circuit adopted this reasoning in holding that all of the evidence should be viewed in the light most favorable to the party opposing the motion, and if there is evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, a motion for directed verdict should be denied. Campbell v. Mouton, 373 So.2d 237 (La.App. 3d Cir. 1979) cited in Sevin v. Shape Spa for Health and Beauty, Inc., 384 So.2d 1011 (La.App. 4th Cir. 1980). Ragas v. Argonaut Southwest Insurance Co., 379 So.2d 822 (La.App. 4th Cir.) aff’d 388 So.2d 707 (La.1980); Perkins v. American Machine & Foundary Co., 385 So.2d 492 (La.App. 1st Cir.) writ den. 393 So.2d 727 (La.1980).
We are confronted with a purely factual determination. Was plaintiff on a mission related to his employment when he left the premises in a company car during his lunch time? After reviewing all of the evidence as most favorable to plaintiff, is that evidence of such quality and weight to cause reasonable and fair-minded persons, in the exercise of impartial judgment, to reach different conclusions? If so, the lower court erred in taking this case from the jury by a directed verdict.
Plaintiff worked as a “car hiker” for Budget which involved picking up cars, having them cleaned, repaired, etc. Plaintiff testified that on the morning of the accident he, along with Edward Martin, a co-employee, and Nolan Darby, their supervisor, performed their routine chore of retrieving automobiles. Plaintiff said he and Martin were told to go to. lunch and permit *1097 ted use of a company car. Martin and plaintiff each punched out their time cards before leaving. After Martin and plaintiff were in the car, Darby called to them and requested they get him a sandwich. Plaintiff’s time card is in evidence and shows that it was punched back in two minutes later, but plaintiff testified he was absolutely certain he hadn’t punched back in. Other time cards in evidence show that when plaintiff didn’t take lunch there is a notation “no lunch” with someone’s initials. Plaintiff was firm in asserting that he and Martin were only going to lunch, had punched out, and were bringing back a sandwich for their supervisor as a favor.
On cross-examination the defense questioned plaintiff about his deposition in which he said that he had no intention of going out to lunch until he was asked by Darby to get a sandwich. Plaintiff testified that he didn’t have transportation and could not leave the premises unless in another’s car. This testimony is not clear but plaintiff indicates Darby told him it was permissible to leave and use the company car. Plaintiff reaffirmed that it was not until he and Martin were in the automobile and ready to leave when Darby asked them to get him a sandwich.
The evidence conflicts concerning use of company cars. Plaintiff testified he was aware of company policy forbidding personal use of their cars, but on several occasions Budget allowed its vehicles to be used to get lunch. Supervisor Darby by deposition said he told plaintiff and Martin to take the company car on the day of the accident in order to retrieve a repaired vehicle at a body shop, but on cross-examination plaintiff testified he didn’t recall that instruction.
Martin was killed in the accident and plaintiff was the only witness to testify (other than Darby’s deposition) regarding the events on the day prior to the collision. Our review of the record shows testimony that was both favorable and unfavorable to the plaintiff. Plaintiff did know of the employer’s policy against personal use of company cars, but stated several times in his testimony that the cars were often used by employees, with the supervisor’s approval, to go to lunch. In the Trial Judge’s Reasons, he stated plaintiff said he never used a company car to go to lunch, but we read plaintiff’s testimony to the contrary. Nor is the evidence clear that the company car was used on this day primarily to get a sandwich for the supervisor. We find ten different times in the record when plaintiff testified that bringing the sandwich back for his supervisor was a favor and not a part of his job. A reasonable man could easily believe this testimony. Plaintiff’s time card is the only one in a group of time cards with a “punch in” two minutes after the “punch out”. On other days when plaintiff worked through lunch the card was merely initialed by the supervisor. If the plaintiff and Martin were not already set to use the company car when the supervisor asked them to bring him a sandwich, why wasn’t the same procedure used on the time card to indicate no lunch?
Admittedly, plaintiff’s answers were weak when subjected to vigorous cross-examination by able defense counsel. Plaintiff’s testimony was both favorable and unfavorable to his cause, but it does raise substantial questions of fact creating the possibility (if not the probability) that plaintiff’s version has merit. “Making credibility evaluations is one of the primary duties of a jury and the trial court may not take this duty from the jury unless the party opposing the directed verdict has failed to produce sufficient evidence upon which reasonable and fair-minded persons could disagree.” Campbell v. Mouton, supra, at p. 240.
The law on lunch time accidents is unclear. The general rule is that “an accident occurs in the course of an employment when it takes place during the time of such employment,” and it arises out of employment when it is “. . . the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed.” Kern v. Southport Mill, 174 La. 432, 141 So. 19, 21 (1932) (Emphasis *1098 in Original). “Ordinarily, an employee who leaves his employer’s premises and takes his noon hour meal at home or some other place of his own choosing is outside the course of his employment from the time he leaves the work premises until he returns. In the absence of a further showing it is assumed that the nature of his employment has not affected his personal eating practices, and the mere fact that he expects to return to his job at the end of the lunch hour is not enough to warrant the inclusion of this period within the course of his employment.” Malone, Louisiana Civil Law Treatise, Yol. 13 § 163 (1980).
In order to determine defendants’ liability all of the circumstances surrounding this accident should be closely examined; such as, when the accident occurred, if on or off the company premises, was the accident a risk of employment, whether the employee was paid at the time of the accident, was the employee’s activity at the direction of or in the interest of the employer. In Smith v. Orleans Management Corporation, 242 So.2d 288 (La.App. 4th Cir. 1970) this court stated the proper test in a marginal case to be: "... to what degree the injured employee was subjected to the hazard causing the injury by his status as an employee and to what degree the injured employee’s activities at the time were at the direction of or in the interest of his employer.” Id. at p. 289 (citations omitted). The proper question here is to ascertain if plaintiff was on his own time merely accommodating his supervisor or was plaintiff acting at the direction of his supervisor.
Our review of all the evidence leads us to conclude that it is of such quality and weight that reasonable and fair-minded persons could easily reach different conclusions and the evidence is not so strong and overwhelming as to preclude a contrary opinion. We feel our learned trial brother made a credibility determination as to the insurer which should have been left for the jury’s determination.
For the foregoing reasons the judgment of the District Court granting a directed verdict is affirmed as to Budget Rent-A-Car of New Orleans, Inc. only, and is annulled and set aside as to National Union Fire Ins. Co. and this matter is remanded for further proceedings. Costs of this appeal are assessed to National Union.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

. LSA-C.C.P. art. 1810(A): “A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.”